FILED

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

98 NOV -3 AM 10: 43
U.S. DISTRICT COURT
N.D. OF ALABAMA

ERNEST LEWIS,              )
                           )
    PLAINTIFF,             )
                           )
VS.                        )        CV97-H-2478-S
                           )
BUTLER MANUFACTURING COMPANY, )
                           )
    DEFENDANT.             )

ENTERED

NOV - 3 1998

### MEMORANDUM OF DECISION

The Court has before it the August 14, 1998 motion of defendant Butler Manufacturing Company (Butler) for summary judgment. Pursuant to the Court's August 21 and September 21, 1998 orders, the motion was deemed submitted, without oral argument, on September 21, 1998.[1]

### I. Procedural History

Plaintiff Ernest Lewis commenced this action on September 16, 1997 by filing a complaint in this Court alleging that defendant Butler violated Title VII, 42 U.S.C. § 1981, the Americans with Disabilities Act (ADA), and the Alabama Workers'

---

[1] On September 22, 1998, defendant filed a motion to strike several affidavits filed by plaintiff Ernest Lewis in his opposition to the motion for summary judgment. The Court will not address the motion to strike at this time because it finds summary judgment to be proper even with consideration of the challenged affidavits.



Compensation Statute through (1) discrimination on the basis of race; (2) retaliation under Title VII and section 1981; (3) discrimination on the basis of a disability; and (4) retaliation under the Alabama Workers' Compensation Statute. Defendants' August 14, 1998 motion for summary judgment asserts that there is a legitimate, nondiscriminatory reason for the termination; plaintiff failed to engage in a statutorily protected expression; and plaintiff is not "disabled" and did not request any accommodation for his alleged disability. Plaintiff filed a brief in opposition to the motion on September 21, 1998.

### II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. Once the moving party has

met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. <u>Id.</u> at 324.

The substantive law will identify which facts are material and which are irrelevant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. <u>Id.</u> at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See <u>Fitzpatrick</u>, 2 F.3d at 1115-17 (citing <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428 (11th Cir. 1991)(<u>en banc</u>)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward

with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district

court that there is an absence of evidence to support the non-moving party's case. <u>Fitzpatrick</u>, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. <u>Lewis v. Casey</u>, 518 U.S. 343, 358 (1996) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts

On September 3, 1996, defendant Butler Manufacturing hired plaintiff Ernest Lewis, who is black, as an assistant operator. (Lewis Dep'n at 130-31; Bradely Dep'n at 10; Def.'s Ans. to Pl.'s Interrog. No. 6). Plaintiff understood that he would be a probationary employee for six months, during which time defendant would evaluate plaintiff's performance. (Lewis Dep'n at 120, 122). After passing a welding qualification, plaintiff was moved to a welder's position in November of 1996. (Lewis Dep'n at 133; Bradley Dep'n at 39). From the beginning of plaintiff's tenure

5

as a welder, supervisor Don Mitchell noted repeated problems with the quality of plaintiff's welding. (Mitchell Dep'n at 11-12). Mitchell spoke to plaintiff approximately ten times about the quality and quantity of his work. (Mitchell Dep'n at 15-16).

In December of 1996, plaintiff asked Mitchell for some dark tinted glasses, a common request, because of the welding arc light. (Lewis Dep'n at 49-54; Bradley Dep'n at 90). Mitchell complied with the request. (Lewis Dep'n at 54). Plaintiff did not ask that he be sent to a doctor about his eyes nor did he inform Mitchell that he had injured his eyes on the job. (Lewis Dep'n at 54; Mitchell Dep'n at 12-13, 22). On December 31, 1996, plaintiff visited an opthamologist Dr. Zarzaur, who diagnosed plaintiff with conjunctivitis in both eyes. (Lewis Dep'n at 57; Letter from Lathram dated 3/3/97). Plaintiff was given a steroid treatment for ten days and returned for a check-up on February 14, 1997. (Letter from Lathram dated 3/3/97).

In reviewing the performance of its welders, defendant used an independent welding inspector, Mr. Vernon Gay from Professional Services Industries. (Lewis Dep'n at 149; Bradley Dep'n at 46). Mr. Gay made several notations regarding plaintiff's "poor workmanship" in January of 1997 and told General Foreman Tom Bradley that there were "serious" problems in

6

the quality of plaintiff's work.  (Qualified Welders Logs for January 1997; Bradley Dep'n at 90).  However, some workers at the Butler plant believe the quality of plaintiff's work was adequate.  (Starkley Aff. ¶ 8; Cunningham Aff. ¶ 8; Gilliam Aff. ¶ 6; McCoy Aff. ¶ 8; Hannah Aff. ¶ 7; Patterson Aff. ¶ 8; McLemore Aff. ¶ 6; Horn Aff. ¶ 9; Waller Aff. ¶ 7).

Plaintiff told Bradley and Mitchell that he needed to see an opthamologist to get a prescription for eyeglasses.  (Lewis Dep'n at 64).  On February 14, 1997, plaintiff received the prescription from Dr. Zarzaur.  (Lewis Dep'n at 63).  Plaintiff brought the prescription to Mitchell, and the glasses were ordered.  (Mitchell Dep'n at 14).  Plaintiff missed no work because of problems with his eyes but was, at plaintiff's request, removed from his welding responsibilities for two days.  (Lewis Dep'n at 79-80, 272-73).

On February 22, 1997, Bradley noted that the quality and quantity of plaintiff's workmanship was poor and he was a "slow worker."  (Four Month Probationary Employee Progress Report for Lewis dated 2/22/97).  Plaintiff averaged about half the production, in terms of weight, of other welders at the plant.  (Bradley Dep'n at 18-19).  On February 28, 1997, Bradley and Plant Manager Clint Bennett decided to terminate plaintiff's

7

employment because of plaintiff's poor welding and low production numbers. (Bradley Dep'n at 7, 11, 14, 18, 82; EEOC Charge). No one, before or during plaintiff's termination, told Bradley that plaintiff had injured his eyes. (Bradley Dep'n at 39-40). Prior to his termination, plaintiff had not discussed a workers' compensation claim with anyone at Butler. (Lewis Dep'n at 244-46).

On March 16, 1997, plaintiff filed a charge of discrimination with the EEOC. (EEOC Charge). Sometime after his termination, plaintiff filed a workers' compensation claim. (Lewis Dep'n at 241, 243-45).

### IV. Applicable Substantive Law and Analysis

Plaintiff's complaint contains the following claims: (1) discrimination on the basis of race; (2) retaliation under Title VII and section 1981; (3) discrimination on the basis of a disability; and (4) retaliation under the Alabama Workers' Compensation Statute. All of plaintiff's claims require application of the McDonnell Douglas framework of burden-shifting. See Combs v. Plantation Patterns, 106 F.3d 1519, 1527-28 (11th Cir.), cert. denied, 118 S. Ct. 685 (1997) (race discrimination claim); Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993) (retaliation claim under Title VII);

Pouncy v. Vulcan Materials Co., 920 F. Supp. 1566, 1579 (N.D. Ala. 1996) (ADA claim); Twilley v. Daubert Coated Prods., Inc., 536 So. 2d 1364, 1369 (Ala. 1988) (retaliation claim under Alabama's Workers' Compensation Statute)[2]. Under the McDonnell Douglass framework, a plaintiff has the initial burden of proving a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Twilley v. Daubery Coated Prods., Inc., 536 So. 2d 1364, 1369 (Ala. 1988). If the plaintiff meets this burden, the defendant must articulate some legitimate, nondiscriminatory reason for the termination. McDonnell Douglas, 411 U.S. at 802; Twilley, 536 So. 2d at 1369. If the defendant offers such a reason, the plaintiff must then produce evidence sufficient for the factfinder to conclude that the defendant's articulated reason is pretextual. McDonnell Douglas, 411 U.S. at 804; Twilley, 536 So. 2d at 1369.

---

[2] While the Alabama Supreme Court did not cite to McDonnell Douglas in discussing the burdens of proof and production in a retaliation claim under Alabama's Workers' Compensation Statute, the court derived its analysis from federal case law under the Rehabilitation Act of 1973, which used the McDonnell Douglas scheme. See Twilley v. Daubert Coated Prods., Inc., 536 So. 2d 1364, 1369 (Ala. 1988) (citing Doe v. New York University, 666 F.2d 761, 776 (2d Cir. 1981) and Pushkin v. Regents of the Univ. of Colo., 658 F.2d 1372, 1387 (10th Cir. 1981)).

### A. Retaliation under the Alabama Workers' Compensation Statute

Under Alabama law[3], an employment contract is generally terminable at will by either party, with or without cause or justification. E.g., Hoffman-La Roche, Inc. v. Campbell, 512 So. 2d 725, 728 (Ala. 1987). However, the Alabama Workers' Compensation Statute provides an exception to this rule where a dismissal is based on the filing of a workers' compensation claim. Section 25-5-11.1 of the Alabama Code provides: "No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits under [the Workers' Compensation Statute] or solely because the employee has filed a written notice of violation of a safety rule." Thus, an employee may establish a prima facie case of retaliatory discharge by proving (1) an attempt to recover workers' compensation benefits; (2) termination; and (3) a causal link between the attempt to recover benefits and the termination. See

---

[3] Alabama substantive law applies to plaintiff's retaliation claim because the injury, termination, occurred in Alabama. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941) (holding federal court sitting in diversity apply the choice of law rules of the state in which it sits); Powell v. Sappington, 495 So. 2d 569, 570 (Ala. 1986) (discussing Alabama choice of law rules).

10

Twilley v. Daubert Coated Prods., Inc., 536 So. 2d 1364, 1369 (Ala. 1988).

Plaintiff's claim lacks merit because there is no causal link between the termination and the filing of a workers' compensation claim. Plaintiff did not file or even discuss the possibility of filing a workers' compensation claim until <u>after</u> his termination. (Lewis Dep'n at 244-46). There can be no causal link between a termination and a subsequent workers' compensation claim. Plaintiff has failed to put forth a prima facie case, and defendant is entitled to judgment as a matter of law as to this claim.

**B. Discrimination under the ADA**

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees." 42 U.S.C. § 12112(a) (1994). Thus, in order to establish a prima facie case under the ADA, a plaintiff must show (1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to discrimination because of the disability. Swain v. Hillsborough County Sch. Bd., 146 F.3d 855, 857 (11th Cir. 1998). The parties dispute all three elements of plaintiff's prima facie case.

11

First, plaintiff contends that his conjunctivitis[4] is a "disability" within the meaning of the ADA. The ADA defines disability as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2) (1994). Plaintiff argues that he satisfies the first and third prongs of the definition. First, plaintiff asserts that his conjunctivitis, or pinkeye, substantially limits a major life activity. Plaintiff claims his impairment[5] affects

---

[4] Conjunctivitis is an inflammation of the conjunctiva, the tissue which lines the back of the eyelid. See Dorland's Illustrated Medical Dictionary 369 (28th ed. 1994). The condition is commonly referred to as "pinkeye," which is the contagious form of conjunctivitis. See id. at 1295.

There is some evidence in the record suggesting that plaintiff suffers from other health problems, such as depression, high blood pressure, and sinus headaches. (Letter from Dr. Berryman dated 4/23/97). Plaintiff does not argue that any of these other alleged health problems are relevant to his claims. (Lewis Dep'n at 231).

[5] The EEOC defines physical or mental impairment as "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary; hemic and lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h) (1998). The Court will assume that conjunctivitis constitutes a physical impairment under the ADA.

12

the major life activity of vision.[6]  Thus, to establish a prima facie case and survive summary judgment under the first prong, plaintiff must present sufficient evidence to create a genuine issue of material fact as to whether his physical impairment substantially limits his ability to see.

The governing regulations define "substantially limits" as unable to perform a major life activity or "significantly restricted as to the condition, manner, or duration under which" the individual can perform the activity.  29 C.F.R. § 1630.2(j)(1) (1998).  Based on the criteria enunciated above, plaintiff failed to create a genuine issue of material fact as to whether plaintiff is disabled under the ADA.  Plaintiff has presented no evidence to show that he has lost his eyesight or that his eyesight is significantly restricted by his conjunctivitis, or pinkeye.  Indeed, his alleged impairment did

---

[6] Plaintiff quotes extensively from a case in which a party argued his ability to work was impaired.  The regulations provide numerous factors in considering whether an impairment is a substantial limitation on the major life activity of work.  See 29 C.F.R. § 1630.2(j)(3) (1998).  Plaintiff has failed to address any of these factors, and the record contains no evidence to support a finding that pinkeye has "significantly restricted" plaintiff's "ability to perform either a class of jobs or a broad range of jobs."  § 1630.2(j)(3)(i); see generally Swain v. Hillsborough County Sch. Bd., 146 F.3d 855, 857-58 (11th Cir. 1998).

not cause plaintiff to miss a single day of work. (Lewis Dep'n at 79-80). The Court finds plaintiff's first argument under the ADA to be frivolous and completely without merit.

Plaintiff also argues that he was regarded as having a physical impairment that substantially limits the major life activity of eyesight. The EEOC regulations define one who is "regarded as having such an impairment" as an individual who (1) has a physical or mental impairment that does not substantially limit major life activities but is treated by his employer as constituting such limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) has no illness or malady defined by the EEOC as a physical or mental impairment but is treated by his employer as having a substantially limiting impairment. 29 C.F.R. § 1630.2(l) (1998). As with real impairments, a perceived impairment must be "substantially limiting and significant." Gordon v. E.L. Hamm & Assocs., 100 F.3d 907, 913 (11th Cir. 1996), cert. denied, 118 S. Ct. 630 (1997).

Plaintiff cites two irrelevant pieces of evidence to support this allegation: (1) General Forman Bradley and supervisor Mitchell "grinned" when plaintiff told them he had to go to a

14

doctor to get some prescription eyewear, (Lewis Dep'n at 64); and (2) plaintiff was briefly removed from his welding responsibilities, at his request, because of his pinkeye, (Lewis Dep'n at 272-73). The fact that Bradley and Mitchell knew plaintiff is nearsighted or farsighted, which apparently is correctable, has no bearing on their knowledge of plaintiff's pinkeye. Indeed, there is no evidence to suggest that plaintiff ever informed Bradley, Mitchell, or Plant Manager Bennett of his pinkeye. (Bradely Dep'n at 39-40; Lewis Dep'n at 54; Mitchell Dep'n at 12-13, 22). Furthermore, even if those three persons knew of plaintiff's pinkeye, there would be no inference that those individuals regarded a common and temporary condition, pinkeye, as a "substantially limiting and significant" impairment. The Court concludes that plaintiff does not have a disability under the ADA.

Because the Court finds that plaintiff is not disabled, it need not address the remainder of plaintiff's prima facie case. Defendant is entitled to judgment as a matter of law as to the ADA claim.

**C. Retaliation under Title VII and Section 1981**

Section 704 of Title VII of the Civil Rights Act of 1964 expressly prohibits discrimination on the basis of an employee's

challenge of discriminatory employment practices. 42 U.S.C. § 2000e-3 (1994). Section 1981 prohibits race discrimination in the creation and enforcement of contracts, which has been interpreted to provide a cause of action for retaliation identical to the Title VII provision. 42 U.S.C. § 1981 (1994); <u>Andrews v. Lakeshore Rehabilitation Hosp.</u>, 140 F.3d 1405, 1412-13 (11th Cir. 1998); <u>see generally</u> <u>Patterson v. Augat Wiring Sys., Inc.</u>, 944 F. Supp. 1509, 1518-21 (M.D. Ala. 1996) (discussing legislative history of section 1981). In order to establish a prima facie case for retaliation under Title VII or section 1981, a plaintiff must show (1) a statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action. <u>Goldsmith v. City of Atmore</u>, 996 F.2d 1155, 1163 (11th Cir. 1993).

Plaintiff's claim for retaliation under Title VII and section 1981 lacks merit because there is no causal link between the termination and the statutorily protected expression. Plaintiff did not file an EEOC charge until <u>after</u> his employment was terminated. (EEOC Charge). While Title VII and section 1981 are not limited to individuals who have filed formal complaints, at a minimum plaintiff must put forth evidence tending to show that defendant was aware of plaintiff's intent to file an EEOC

16

charge. See Goldsmith, 996 F.2d at 1163; Rollins v. Florida Dep't of Law Enforcement, 868 F.2d 397, 400 (11th Cir. 1989). There is no evidence to suggest that any of the persons involved in the decision to terminate plaintiff's employment knew of plaintiff's intent to file an EEOC charge. The Court finds plaintiff has failed to meet his burden of establishing a prima facie case for retaliation under Title VII and section 1981, and defendant is entitled to judgment as a matter of law on that claim.

**D. Race Discrimination under Title VII and Section 1981**

Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 provides: "It shall be unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race."  42 U.S.C. § 2000e-2(a) (1994). Section 1981 prohibits race discrimination in the creation and enforcement of contracts. 42 U.S.C. § 1981 (1994). The allocation of burdens, the elements of a prima facie case, and the legal analysis are the same for employment claims stemming from Title VII and section 1981. See Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1060 (11th Cir. 1994).

In order to establish a prima facie case of discriminatory discharge, a plaintiff must show that (1) he was a member of a

17

protected class; (2) he was qualified for the job; (3) he was terminated despite his qualifications; and (4) after the termination the position remained open and the employer continued to seek applicants of similar qualifications. <u>Evans v. McClain of Ga., Inc.</u>, 131 F.3d 957, 964 (11th Cir. 1997). The Court finds plaintiff has met his burden in establishing a prima facie case for race discrimination. Plaintiff is black and, according to a plethora of affidavits, was qualified for the position he held. (Starkley Aff. ¶ 8; Cunningham Aff. ¶ 8; Gilliam Aff. ¶ 6; McCoy Aff. ¶ 8; Hannah Aff. ¶ 7; Patterson Aff. ¶ 8; McLemore Aff. ¶ 6; Horn Aff. ¶ 9; Waller Aff. ¶ 7). Therefore, the burden will shift to defendant to articulate a legitimate, nondiscriminatory reason for the termination.

Defendant has articulated a legitimate reason for the termination: plaintiff's poor welding and low production numbers during his probationary period.[7] Many of the evaluations which resulted in his termination were performed by an independent welding inspector, Mr. Vernon Gay. (Lewis Dep'n at 149; Bradley

---

[7] Even if plaintiff had established a prima facie case as to all his claims, the Court would nonetheless grant defendant's motion for summary judgment because defendant's proffered reason for discharge negates any inference of discrimination on the basis of retaliation, race, or disability.

18

Dep'n at 46). Plaintiff has not disputed General Foreman Bradley's statement that plaintiff averaged only half the production of other welders in the plant. (Bradley Dep'n at 18-19). Plaintiff has produced no evidence tending to show that these poor evaluations by an independent inspector were a pretext for discrimination. For this reason, defendant is entitled to judgment as a matter of law as to the race discrimination claim.

In summary, defendant is entitled to judgment on all of plaintiff's claims. The Court concludes that no material issues of fact remain. A separate order will be entered.

DONE this the 3rd day of November, 1998.

_____
SENIOR UNITED STATES DISTRICT JUDGE